## MULLEN v. WESTERN UNION BEEF COMPANY.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF COLORADO.

No. 153. Argued and submitted January 18, 1899. — Decided February 20, 1899.

On the facts stated by the court in its opinion, it declines to hold that it
affirmatively appears from the record that a decision could not have been
had in the Supreme Court of the State, which is the highest court in the
State; and this being so, it holds that the writ of error must be dis-
missed.

THIS was an action brought by Mullen and McPhee against
the Western Union Beef Company, in the district court of
Arapahoe County, Colorado, to recover damages for loss of
stock occasioned by the communication from cattle of defend-
ant to cattle of plaintiffs of the disease known as splenetic or
Texas fever, by the importation into Colorado of a herd of
Texas cattle, in June, 1891, and suffering them to go at large,
in violation of the quarantine rules, regulations and orders of
the United States Department of Agriculture, in accordance
with the act of Congress approved May 29, 1884, c. 60, entitled
"An act for the establishment of a Bureau of Animal Indus-
try, etc.," 23 Stat. 31; and the act approved July 14, 1890,
c. 707, 26 Stat. 287; and in violation of the quarantine rules
and regulations of the State of Colorado. The trial resulted
in a verdict for defendant, on which judgment was entered.
Plaintiffs sued out a writ of error from the Court of Appeals
of the State of Colorado and the judgment was affirmed,
whereupon the present writ of error was allowed.

The Court of Appeals held that the question of violation
by defendant of the quarantine rules and regulations of the
State need not be considered because "upon sufficient evi-
dence, it was settled by the jury in defendant's favor;" that
"no question of negligence generally in the shipment and man-
agement of the cattle is presented by the record;" and that
the theory on which the case had been tried below and was
argued in that court was that "if the loss of the plaintiffs'

cattle was in consequence of disease communicated by the cattle of the defendant, its liability depends upon its acts with reference to rules and regulations which it was legally bound to observe."

The regulations of the Secretary of Agriculture were as follows :

"*Regulations Concerning Cattle Transportation.*
"UNITED STATES DEPARTMENT OF AGRICULTURE,
OFFICE OF THE SECRETARY,
WASHINGTON, D. C., *February* 5, 1891.
"To the managers and agents of railroad and transportation companies of the United States, stockmen and others :

"In accordance with section 7 of the act of Congress approved May 29, 1884, entitled 'An act for the establishment of a Bureau of Animal Industry, to prevent the exportation of diseased cattle and to provide means for the suppression and extirpation of pleuro-pneumonia and other contagious diseases among domestic animals,' and of the act of Congress approved July 14, 1890, making appropriation for the Department of Agriculture for the fiscal year ending June 30, 1891; you are notified that a contagious and infectious disease known as splenetic or southern fever exists among cattle in the following-described area of the United States: . . . From the 15th day of February to the 1st day of December, 1891, no cattle are to be transported from said area to any portion of the United States north or west of the above-described line, except in accordance with the following regulations."

[Here followed a series of stringent rules concerning the method to be pursued in transporting cattle from the infected districts.]

"UNITED STATES DEPARTMENT OF AGRICULTURE,
OFFICE OF THE SECRETARY,
WASHINGTON, D. C., *April* 23, 1891.
"Notice is hereby given that cattle which have been at least ninety days in the area of country hereinafter described

may be moved from said area by rail into the States of Colorado, Wyoming and Montana for grazing purposes, in accordance with the regulations made by said States for the admission of southern cattle thereto.

"Provided:

"1. That cattle from said area shall go into said States only for slaughter or grazing, and shall on no account be shipped from said States into any other State or Territory of the United States before the 1st day of December, 1891.

"2. That such cattle shall not be allowed in pens or on trails or ranges that are to be occupied or crossed by cattle going to the eastern markets before December 1, 1891, and that these two classes shall not be allowed to come in contact.

"3. That all cars which have carried cattle from said area shall, upon unloading, at once be cleaned and disinfected in the manner provided by the regulations of this department of February 5, 1891.

"4. That the state authorities of the States of Colorado, Wyoming and Montana agree to enforce these provisions."

The court, after stating that the territory described in both orders included that from which the defendant's cattle were shipped, said : "It is the rules relating to the isolation of cattle moved from infected districts, and more particularly the second proviso of the second order, which were claimed to have been violated by the defendant."

And it was then ruled that the regulations were not binding, as it was not shown that the State had agreed to them ; that they were not authorized by the statute ; that " the second provision undertakes to regulate the duties in relation to them [the cattle], of the persons by whom they might be removed after their arrival in the State, and it is upon this provision that plaintiffs' reliance is chiefly placed. After becoming domiciled within the State their management would be regulated by its laws and not by the act of Congress. Any violation of the Federal law in connection with the cattle would consist in their removal. The disposition of them after-

wards was not within the scope of the statute." 9 Colorado, 497. 49 Pac. Rep. 425.

*Mr. T. B. Stuart* for plaintiffs in error. *Mr. W. C. Kingsley* filed briefs for the same.

*Mr. C. S. Thomas* and *Mr. W. H. Bryant* for defendant in error submitted on their brief, on which was also *Mr. H. H. Lee.*

Mr. Chief Justice Fuller delivered the opinion of the court.

We are met on the threshold by the objection that the writ of error runs to the judgment of the Court of Appeals, and cannot be maintained, because that is not the judgment of the highest court of the State in which a decision could be had.

The Supreme Court of Colorado is the highest court of the State, and the Court of Appeals is an intermediate court, created by an act approved April 6, 1891, (Sess. Laws, Col. 1891, 118,) of which the following are sections:

"Section 1. No writ of error from, or appeal to, the Supreme Court shall lie to review the final judgment of any inferior court, unless the judgment, or in replevin, the value found exceeds two thousand five hundred dollars, exclusive of costs. *Provided,* this limitation shall not apply where the matter in controversy relates to a franchise or freehold, nor where the construction of a provision of the Constitution of the State or of the United States is necessary to the determination of a case. *Provided, further,* that the foregoing limitation shall not apply to writs of error to county courts."

"Section 4. That the said court shall have jurisdiction ·

"*First* — To review the final judgments of inferior courts of record in all civil cases and in all criminal cases not capital.

"*Second* — It shall have final jurisdiction, subject to the limitations stated in subdivision 3 of this section, where the judgment, or in replevin the value found is two thousand five hundred dollars, or less, exclusive of costs.

" *Third* — It shall have jurisdiction, not final, in cases where the controversy involves a franchise or freehold, or where the construction of a provision of the Constitution of the State, or of the United States, is necessary to the decision of the case; also, in criminal cases, or upon writs of error to the judgments of county courts. Writs of error from, or appeals to, the Court of Appeals shall lie to review final judgments, within the same time and in the same manner as is now or may hereafter be provided by law for such reviews by the Supreme Court."

The Supreme Court of Colorado has held in respect of its jurisdiction under these sections, that whenever a constitutional question is necessarily to be determined in the adjudication of a case, an appeal or writ of error from that court will lie; that " it matters but little how such question is raised whether by the pleadings, by objections to evidence or by argument of counsel, provided the question is by some means fairly brought into the record by a party entitled to raise it;" but " it must fairly appear from an examination of the record that a decision of such question is necessary, and also that the question raised is fairly debatable," *Trimble* v. *People*, 19 Colorado, 187; and also that " when it appears by the record that a case might well have been disposed of without construing a constitutional provision, a construction of such provision is not so necessary to a determination of the case as to give this court jurisdiction to review upon that ground," *Arapahoe County* v. *Board of Equalization*, 23 Colorado, 137; and, again, that " unless a constitutional question is fairly debatable, and has been properly raised, and is necessary to the determination of the particular controversy, appellate jurisdiction upon that ground does not exist." *Madden* v. *Day*, 24 Colorado, 418.

This record discloses that defendant insisted throughout the trial that the acts of Congress relied on by plaintiffs were unconstitutional if construed as authorizing the particular regulations issued by the Secretary.

When plaintiffs offered the rules and regulations in evidence, which they contended defendant had violated, defend-

ant objected to their admission on the two grounds that they were not authorized by the acts of Congress, and that, if they were, such acts were unconstitutional. The objection was overruled and defendant excepted.

The regulations having been introduced in evidence, plaintiffs called as a witness, among others, a special agent of the Department of Agriculture, who was questioned in respect of their violation, to which defendant objected and excepted on the same grounds.

At the conclusion of plaintiffs' case, a motion for non-suit was made by defendant, the unconstitutionality of the acts under which the regulations were made being again urged, and an exception taken to the denial of the motion.

The trial then proceeded, and, at its close, defendant requested the court to give this instruction: "The court instructs the jury that the act of Congress and the rules and regulations made under the same which the plaintiffs allege to have been violated, are not authorized by the Constitution of the United States, and are not valid subsisting laws or rules and regulations with which the defendant is bound to comply, and any violation of the same would not, of itself, be an act of negligence, and you are not to consider a violation of the same as an act of negligence in itself in arriving at a verdict in this case."

This instruction was objected to and was not given, though no exception appears to have been thereupon preserved.

On behalf of plaintiffs the court was asked to instruct the jury as follows:

"If the jury are satisfied from the evidence that the defendant company failed to comply with paragraph two of the rules and regulations of the United States Department of Agriculture of April 23, 1891, and that the defendant company did not put its cattle in pens or on trails or ranges that were to be occupied or crossed by the plaintiffs' cattle going to eastern markets before December, 1891, so that these two classes should not come in contact, then that constitutes negligence and want of reasonable care on the part of the defendant, and you need not look to any other evidence to find that the defendant did

not use reasonable care in this case, and that the defendant was guilty of negligence."

This was refused by the court and plaintiffs excepted.   But the court charged the jury that the rule promulgated by the Secretary of Agriculture "would have the effect to give to this defendant notice that the United States authorities having in charge the animal industries, so far as the Government of the United States may control it, were of the opinion that it was unsafe to ship cattle from Kimble County at that period of the year into Colorado and graze them upon lands that were being occupied by other cattle intended for the eastern market, or to allow them to co-mingle with them."   To this modification of the instruction requested plaintiffs saved no specific exception.

After the affirmance of the judgment by the Court of Appeals, plaintiffs filed a petition for a rehearing, the eighth specification of which was that —

"This court erred in holding and deciding that the rules and regulations promulgated by the Secretary of Agriculture on April 23, 1891, as shown by the record herein, were not applicable to the herd of cattle which the defendant in error imported into Colorado in June, 1891, as shown by the record herein, for the reason, as this court held, that after said cattle were domiciled in Colorado their management must be regulated by the state laws, and not by the act of Congress, and that the disposition of said cattle afterwards was not within the scope of Federal authority."

It thus appears that if the trial court and the Court of Appeals had been of the opinion that the Secretary's rules and regulations were within the terms of the authority conferred by the statutes, and that non-compliance therewith would have constituted negligence *per se*, those courts would have been necessarily compelled to pass upon the constitutionality of the acts, which question was sharply presented by defendant.   And it is also obvious that if the Supreme Court had been applied to and granted a writ of error, and that court had differed with the conclusions of the Court of Appeals, arrived at apart from constitutional objections, the validity of the acts and regulations would have been considered.

The Court of Appeals seems to have been of opinion that after the cattle arrived in Colorado, Congress had no power to regulate their disposition, and hence that the regulations were not binding. And the question of power involved the construction of a provision of the Constitution of the United States. At the same time its judgment may fairly be said to have rested on the view that the statutes did not assert the authority of the United States, but conceded that of the State, in this regard; and that the regulations were not within the terms of the statutes. But, if the case had reached the Supreme Court, that tribunal might have ruled that the judgment could not be sustained on these grounds, and then have considered the grave constitutional question thereupon arising.

And although the Supreme Court might have applied the rule that where a judgment rests on grounds not involving a constitutional question it will not interfere, we cannot assume that that court would not have taken jurisdiction, since it has not so decided in this case, nor had any opportunity to do so.

We must decline to hold that it affirmatively appears from the record that a decision could not have been had in the highest court of the State, and, this being so, the writ of error cannot be sustained. *Fisher* v. *Perkins*, 122 U. S. 522.

*Writ of error dismissed.*